UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KEVIN RAY HOLMES,

                              Plaintiff,

        v.                                          3:17-cv-00320-RCJ-WGC

ISIDRO BACA et al.,                                 **ORDER**

                              Defendants.

Plaintiff Kevin Holmes, a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), has sued multiple Defendants under 42 U.S.C. § 1983 for events that occurred while Plaintiff was incarcerated at Northern Nevada Correctional Center ("NNCC"). Upon screening under 28 U.S.C. § 1915A, the Court gave Plaintiff leave to amend his equal protection claim but dismissed his due process claim with prejudice. The Court now screens the First Amended Complaint ("FAC").

I.      **LEGAL STANDARDS**

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or its officers or employees. *Id.* § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous or malicious, fail to state a claim, or seek monetary relief from an immune defendant. *Id.* § 1915A(b). This includes claims based on fantastic or delusional scenarios. *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989). Also, when a prisoner seeks to proceed without prepayment of fees, a court must dismiss if "the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A).

1

When screening claims for failure to state a claim, a court uses the same standards as under Rule 12(b)(6). *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency, *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983), and dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A court treats factual allegations as true and construes them in the light most favorable to the plaintiff, *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986), but does not accept as true "legal conclusions . . . cast in the form of factual allegations." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). A plaintiff must plead facts pertaining to his case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), he must also allege the facts of his case so that the court can determine whether he has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary

judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Also, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record" if not "subject to reasonable dispute." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

To state a claim under § 1983, a plaintiff must allege (1) violation of a right secured by the Constitution or laws of the United States (2) by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## II.    ANALYSIS

Plaintiff sues Defendants Warden Isidro Baca, AWP Brian Ward, CCS III Shannon Moyle, and CCS I Skulstad for events that took place at NNCC and the Warm Springs Correctional Center ("WSCC"). Plaintiff lists two counts: (1) a Fourteenth Amendment equal protection violation related to alleged racial discrimination in the assignment of prison jobs; and (2) a First Amendment retaliation claim related to a transfer after filing of the instant lawsuit.

### A.    Equal Protection Clause

In the Complaint, Plaintiff alleged that Skulstad racially discriminated against him, an African-American, by giving prison job to European-American inmates. In the previous screening order, the Court dismissed the claim with leave to amend, as Plaintiff had not alleged facts indicating any intent to discriminate based on race. In the FAC, Plaintiff again alleges that he was racially discriminated against because two unit porter positions were awarded to European-American inmates instead of Plaintiff, who is African-American, despite the European-American inmates having been disciplined in the past. Plaintiff alleges that he has observed Defendant Skulstad employ policies that are racially discriminatory, such as segregating African-American inmates from European-American inmates and refusing to submit African-American inmates' requests for job classification, except for remedial, non-paying jobs, while submitting European-American inmates' requests, even where the American inmates were

more qualified. He alleges that Skulstad refused to "level reduce" European-American inmates receiving notices of charges until after conviction, and sometimes would not "level reduce" them even after conviction. She would "level reduce" African-American inmates, however, sometimes even in the absence of any notice of charges. She would also "level reduce" African-American inmates, but not European-American inmates, when the inmate lost a job assignment.

When Plaintiff applied for a gym porter position, he was the only African-American inmate that was found to meet all classification requirements for the position. The gym porter positions were given to European-American inmates; Defendants Ward and Moyle denied Plaintiff the position based upon his race. Plaintiff claims that Athletic Supervisor Cheney approached Plaintiff and told him Defendant Moyle said Plaintiff would not receive the job because "he is not a good person."

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Racial discrimination in prisons or jails is unconstitutional, except for "the necessities or prison security and discipline." *Cruz v. Beto*, 405 U.S. 319, 321 (1972); *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004). In prison, "even fundamental rights are judged by a standard of reasonableness—specifically, whether the actions of prison officials are 'reasonably related to legitimate penological interests.'" *Walker*, 370 F.3d at 974, quoting *Turner v. Safely*, 482 U.S. 78, 89 (1987).

Plaintiff has sufficiently stated an equal protection claim against Skulstad, but not against the other Defendants. He has alleged that Skulstad awarded unit porter jobs to European-American inmates over him because he is African-American. He has sufficiently paired the

allegations of disparate outcome with allegations fairly inferring a racially discriminatory intent, i.e., that Skulstad generally treats inmates differently in several contexts (submission of requests for job classification, housing assignments, and level reduction) based on race. Plaintiff's allegation that Moyle did not assign him a job due to a statement about Plaintiff not being "a good person," however, does not show a racially discriminatory intent, and Plaintiff makes no other allegations against Moyle or the other Defendants indicating racially discriminatory motives. Plaintiff's equal protection claim is therefore dismissed, this time with prejudice, as against all Defendants except Skulstad, but the claim may proceed against her.

### B.  First Amendment Retaliation

Plaintiff has added a new claim based on alleged retaliation against him for having filed the present action in May 2017. Plaintiff had no leave to add this claim, but supplemental pleading to add allegations of events occurring after the existing pleading is favored. *See* Fed. R. Civ. P. 15(d). Plaintiff alleges Baca, Ward, Moyle, and Skulstad retaliated against him in July 2017 by transferring him to WSCC, a more restricted and dangerous prison, after seventeen years at NNCC. Since his transfer to WSCC, Plaintiff has been "level reduced" several times without cause, though no adverse actions occurred before the filing of grievances in this case.

Prisoners have a First Amendment right to file prison grievances and pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567–68 (footnote omitted). Actual chilling is not required; it is enough if an official's acts "would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* at 568–69 (quoting *Mendocino Envt'l Ctr. V. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996))) (emphasis in *Rhodes*).

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government for redress of grievances may support a claim under § 1983. *Rizzo v. Dawson*, 778 F.2d 527, 531–32 (9th Cir. 1985). To establish a prima facie case, a plaintiff must show not only that a defendant retaliated against him for his protected activity but also that the defendant's actions did not serve any legitimate penological goal, such as preserving institutional order and discipline. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (citing *Rizzo*, 778 F.2d at 532). A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between the alleged retaliation and the plaintiff's protected activity. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977)).

The timing of events surrounding alleged retaliation may constitute circumstantial evidence of retaliatory intent. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). Where a causal nexus is to be inferred purely from the temporal proximity between a protected activity and an adverse action, however, a plaintiff must show a "very close" temporal proximity. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (citing cases holding that 3- or 4-month delays are insufficient); *Curley v. City of N. Las Vegas*, 772 F.3d 629, 634 (9th Cir. 2014). The Courts of Appeals have come to similar conclusions as to time limits, although some circuits employ a stricter standard than others. *See Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 331 (3rd Cir. 2015) (holding that three months was insufficient under the Third Circuit's "unusually suggestive" standard); *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007) (collecting cases variously holding that as much as three months' delay can be sufficient but as little as two months can be insufficient); *Kidwell v. Eisenhauer*, 679 F.3d 957, 966–67 (7th Cir. 2012) (noting that in the Seventh Circuit, the lapse may typically be "no more than a few days"); *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 802 (9th Cir. 2003) (nine months insufficient); *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (11th Cir. 2002) (thirteen days "sufficient, but barely so").

The surrounding circumstances of a complaint are also important, e.g., where a significant intervening event occurs relevant to the adverse action that is alleged to be retaliatory or where adverse action or progressive discipline was already in motion when the protected activity occurred. *See, e.g.*, *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005); *Kidwell*, 679 F.3d at 967. This will naturally be a more prevalent aspect of a retaliation analysis in the prison context than in the employment context, because prisoners often file a steady stream of grievances and lawsuits against defendants who are simultaneously imposing a steady stream of adverse actions against prisoners for legitimate penological reasons. It is probably no coincidence that some of the most litigious prisoners can also be some of the most penologically intransigent, so the task of sorting out retaliatory motives from legitimate ones in the face of multiple grievances, lawsuits, and disciplinary actions can be onerous. Nevertheless, the factual complexity of such an analysis does not alter the legal standard: the burden of proof remains on the prisoner–plaintiff to show a causal nexus between a particular protected activity and a particular adverse action that is unrelated to legitimate penological goals.

Based on the allegations, Plaintiff was transferred to WSCC about two months after filing the present lawsuit and was later "level reduced." Plaintiff does not allege any comments by any Defendants indicating a retaliatory motive. He relies purely on the temporal proximity of the transfer to the lawsuit. Two months might in some cases be close enough to infer a causal nexus, but not here. Although it is possible one or more Defendants learned of the lawsuit at some point, there is no plausible allegation that Defendants knew of the lawsuit at the time of transfer. Because the action is still in the screening stage, Defendants have not yet been served. Nor has any Defendant appeared for any purpose. Moreover, Plaintiff alleges his grievances at NNCC were filed in June and July of 2015, two years before the transfer. This makes the two-month delay between filing the lawsuit in May 2017 and the transfer in July 2017 even more significant, because it shows that Defendants were aware of Plaintiff's grievances two years before the

transfer.  Temporal proximity alone does not support a retaliation claim in this case.  The Court dismisses this claim, with leave to amend.

### C.    Amendment

Plaintiff is granted leave to amend the First Amendment retaliation claim.  An amended complaint supersedes (replaces) all previous complaints, so an amended complaint must be complete in itself. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 907 n.1 (9th Cir. 2012); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989).  Plaintiff must file the second amended complaint on this Court's approved prisoner civil rights form, and it must be entitled "Second Amended Complaint."  Plaintiff must file the second amended complaint within twenty-eight (28) days from the date of this Order, or the Court may dismiss the First Amendment retaliation claim with prejudice without further notice, and the action will then proceed only against Defendant Skulstad on the equal protection claim.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that a decision on the Application to Proceed in Forma Pauperis (ECF No. 1) is DEFERRED.

IT IS FURTHER ORDERED that Count I may PROCEED against Defendant Skulstad.

IT IS FURTHER ORDERED that Count II is DISMISSED, with leave to amend within twenty-eight (28) days of this Order.

IT IS FURTHER ORDERED that Defendants Baca, Moyle, and Ward are DISMISSED from the action.

IT IS FURTHER ORDERED that the Clerk shall send Plaintiff the approved form for filing a § 1983 complaint, instructions, and a copy of the First Amended Complaint (ECF No. 6). Plaintiff must use the approved form and write the words "Second Amended" above the words "Civil Rights Complaint" in the caption. The Court will screen the second amended complaint in a separate screening order, which may take several months. If Plaintiff does not timely file a second amended complaint, the Court may dismiss Count II with prejudice without further notice, and the action will then proceed only against Defendant Skulstad on the equal protection claim.

IT IS SO ORDERED.

DATED: This 6th day of November, 2018.

_____
ROBERT C. JONES
United States District Judge

9